UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES COTTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 20-3111-JBM |
| | ) |
| CAMERON WATSON, et al., | ) |
| | ) |
| Defendants. | ) |

## MERIT REVIEW – AMENDED COMPLAINT

Plaintiff, proceeding *pro se*, at the Western Correctional Center (Western), files a complaint under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs. The Court is required by 28 U.S.C. § 1915A to "screen" Plaintiff's amended complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. In reviewing the complaint, the court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). While the pleading standard does not require "detailed factual allegations", it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. U.S.*, 721 F.3d 418, 422 (7th Cir. 2013)(citation omitted).

On May 10, 2018, Plaintiff was being moved to a different cellhouse within Western. While he was walking down a flight of stairs, he rolled his ankle, heard a "pop" and experienced extreme pain. When Plaintiff arrived at 4 House, he informed an officer who called the healthcare unit. At 9:30 p.m., the officer to whom Plaintiff had made the complaint was passing out medications when Defendant Nurse Jane Doe arrived. The Officer pointed out Plaintiff as the

1

individual with the ankle injury. Plaintiff told the nurse his ankle was swollen and she replied, "yeah it looks nasty." Plaintiff claims without elaboration that Defendant Jane Doe did not follow protocols and did not provide treatment. When Plaintiff asked about being sent to the healthcare unit, he was told that the unit was short staffed, and he might not be seen until the following day.

Plaintiff was seen on May 13, 2018, three days after the initial injury. In the meantime, he was in pain and unable to sleep, unable to climb to the top bunk, and unable walk to chow hall. Plaintiff explains that he had to hobble to the healthcare unit for his appointment. When he arrived, he was evaluated by an unidentified nurse who only prescribed ice and Tylenol.

Plaintiff continued in excruciating pain until May 19, 2018, when seen by Nurse M. Patt, not a named Defendant. Nurse Patt wrapped Plaintiff's ankle with an Ace wrap and told him it should have been immobilized when the injury first occurred. Nurse Patt provided ice, crutches, a low gallery and a low bunk permit. She advised Plaintiff to avoid putting any weight on the ankle and to keep it elevated.

On May 21, 2018, Plaintiff was seen by Nurse Practitioner Smith, not a party. NP Smith diagnosed Plaintiff with a severe ankle sprain. She ordered an x-ray and wrote orders for the continued use of crutches, telling Plaintiff to keep weight off of the ankle and to keep it elevated. The x-ray results were negative for fracture or dislocation. For reasons not explained, Plaintiff believed he had a torn Achilles tendon, requesting to be seen by an outside doctor. On an unidentified date, Plaintiff submitted a sick call request, but was not scheduled to be seen.

On June 26, 2018, Plaintiff was again seen by NP Smith who continued the Tylenol and crutches and ordered another x-ray. When Plaintiff complained that these modalities were not

working, NP Smith told him there was nothing she could do until she received the x-ray results. Plaintiff does not reveal the results of these x-rays.

Plaintiff filed a grievance and wrote directly to Healthcare Administrator Defendant Ashcraft, complaining of the lack of care and requesting to be seen by an outside specialist. Plaintiff received no response.

On August 16, 2018, Plaintiff submitted a sick call slip as he was experiencing severe pain and swelling in his foot. On August 17, 2018, Plaintiff was seen by Defendant Nurse Practitioner Miller. Plaintiff asserts that Defendant Miller told him that he had partial tear of his Achilles tendon, but a September 27, 2018 ultrasound was negative for such a tear. Plaintiff complains that Defendant Miller "took back" his crutches despite his protestations that it was painful to walk without them. On August 19, 2018, wrote to Defendant Miller asking that she authorize the crutches as he was experiencing excruciating and debilitating pain. Plaintiff did not receive a response.

On September 29, 2018, Plaintiff was seen by Defendant Dr. Shah. Defendant Shah prescribed prednisone, something of which Plaintiff is critical asserting that "it did not work the first time." Defendant reminded Plaintiff not to walk on his ankle, informing him that that was the reason the ankle was so swollen. When Plaintiff informed him that Defendant Miller had refused to authorize the crutches, Defendant Shah allegedly replied that he, Dr. Shah, could not go against Defendant Miller's decision.

On October 23, 2018, Plaintiff was seen by Dr. Truscwych, not a party. Dr. Truscwych prescribed, Naprosyn and told Plaintiff he would send him out to see a podiatrist. This was not done, however, and Plaintiff was referred for physical therapy instead. Plaintiff claims on "information and belief" that the "Wexford panel" refused to authorize the referral. The Court

3

views this as referring to the Wexford Collegial Review policy under which referral for outside care must be pre-approved.

Plaintiff subsequently underwent therapy twice daily, though he was unable to do some of the exercises due to the swelling and limited range of motion of his ankle. Plaintiff claims, that on December 19, 2018, NP Smith decreased his therapy to once daily.

On December 21, 2018, Plaintiff presented to physical therapy and was seen by Nurse Steele who is not named as a Defendant. Nurse Steele could not find his list of exercises or the exercise resistance bands and cancelled the session. On December 22, 2018, Plaintiff was seen by an unidentified nurse who also has not been named as a Defendant. The Nurse was unable to find Plaintiff's folder and gave him a resistance band, but did not provide therapy.

Plaintiff asserts claims against the Jane Doe nurse who saw him on May 10, 2018. He asserts that Defendant failed to provide him urgent care for his severe ankle sprain and failed to alleviate the excruciating pain. Plaintiff pleads that Defendant NP Miller was deliberately indifferent in discontinuing the use of crutches, even though she had diagnosed him with a partial Achilles tendon tear. Plaintiff asserts that Defendant Shah prescribed him prednisone, even though he knew it was "completely ineffective in treating the Plaintiff's ankle injury." He also faults Dr. Shah for not contravening Defendant Miller's orders cancelling the crutches. He also claims that Healthcare Administrator Ashcraft was aware of his complaints through his grievances and, despite the "sham treatment," took no action.

Plaintiff makes the vague claim that Wexford had a policy or practice under which inmates were routinely denied access to medication and medical care. Plaintiff also asserts that Wexford is liable for a "shortage of nurses" in the health care unit, causing delays in the processing of sick call requests. He also faults Wexford for not having a physical therapist on-

site to monitor inmates undergoing therapy. Lastly, he asserts that Wexford had an unconstitutional policy under which the requested podiatric referral was denied. Plaintiff requests declaratory and injunctive relief as well as nominal, compensatory and punitive damages.

## ANALYSIS

It is well established that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment. *Snipes v DeTella*, 95 F3d 586, 590 (7th Cir 1996), citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A Plaintiff alleging deliberate indifference must show (1) that the professional knew of the serious medical need, and (2) disregarded that need. *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir 1998), citing *Farmer*, 511 U.S. 825, 837 (1994). Mere negligence, or even gross negligence, does not constitute deliberate indifference. *Id* at 590. Similarly, a prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes* at 591, citing, *Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir. 1974).

Plaintiff states a claim as to the Jane Doe nurse who observed his injured ankle on May 10, 2018 and did not provide treatment. While Plaintiff claims that Defendant Shah provided him a steroidal medication knowing it would be ineffective, Plaintiff fails to plead facts to support that Defendant Shah actually knew of this alleged lack of efficacy and failed to take reasonable measures to provide effective treatment. Plaintiff does, however, plead a colorable claim against Defendant Shah because Defendant acquiesced in Defendant Miller's order to discontinue the use of crutches. Plaintiff also states a colorable claim against Defendant Miller for discontinuing the crutches prior to receiving the ultrasound results which, ultimately, did not show an Achilles tendon tear.

Plaintiff fails to state a claim as to Defendant Ashcraft, however, as while she was aware of his complaints, Plaintiff was under the care of two physicians and two nurse practitioners. "If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that this prisoner is in capable hands." *See also*, *Cardona v. Pickett*, No. 07-503, 2010 WL 914929, at *7 (S.D. Ill. Mar. 11, 2010) (defendant Health Services Administrator was not responsible for an inmate's medical treatment and, therefore, not deliberately indifferent to the inmate's medical needs)

Plaintiff will be allowed to proceed on the claim that he was injured, based on his conclusory allegations that a Wexford collegial review policy existed under which his referral to an outside provider was denied. Plaintiff is placed on notice, however, that the mere existence of a collegial review policy, if proved, does not offend the Constitution and Plaintiff cannot prevail on such a claim unless he is able to establish that the existence of the alleged policy, and that the policy was applied in such a way as to cause him injury. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 113 S. Ct. 1160, 1162-63 (1993). *See also*, *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 651 (7th Cir. 2021) (no constitutional violation in 20-month delay while awaiting collegial review approval).

Plaintiff's vague allegations that inmates were routinely denied care due to an unidentified Wexford policy; and that there was an insufficient number of nurses in the healthcare unit are dismissed as Plaintiff fails to plead facts in support. Plaintiff's claim that Wexford violated his constitutional rights by not having an on-site physical therapist also fails as Plaintiff has pled that there were nurses on staff to oversee the therapy.

**IT IS THEREFORE ORDERED:**

1. This case shall proceed on the deliberate indifference claims against the Jane Doe Nurse, Dr. Shah and NP Miller; and the *Monell* claim against Defendant Wexford identified herein. All other claims will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15. Plaintiff is placed on notice that it will be his responsibility through disclosures and discovery to identify the Doe Defendant.

2. Plaintiff files [13], a letter requesting the status of this case. Plaintiff is advised that in the future, if he seeks relief of this Court, he is to file it as a motion, not a letter. To the extent that [13], is viewed as a motion, it is rendered MOOT by this order.

3. The Clerk is directed to send to each Defendant pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

4. If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5. Defendants shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal

Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

6. Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

7. Once counsel has appeared for a Defendant, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

8. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

9. Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

 1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES;

 2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES; AND

3) ENTER THE STANDARD QUALIFIED PROTECTIVE ORDER PURSUANT TO THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

_3/30/2021_                                                            _s/Joe Billy McDade_
ENTERED                                                        JOE BILLY McDADE
                                                                  UNITED STATES DISTRICT JUDGE