UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JAMES COTTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 20-3111 |
| | ) | |
| BRITTANY MILLER, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT ORDER

Plaintiff, proceeding pro se and presently incarcerated at Western Illinois Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment claim for deliberate indifference to a serious medical need. The matter comes before this Court for ruling on the Defendants' Motion for Summary Judgment. (Doc. 64). The motion is granted.

## PRELIMINARY MATTERS

### Defendant Jane Doe

The Court's Merit Review Order permitted Plaintiff to proceed on an Eighth Amendment medical claim against Defendant Jane Doe #1 (also referred to as Jane Doe Nurse). (Doc. 15 at 7). The Court's Scheduling Order entered June 9, 2021, required Plaintiff to identify any Doe defendants within 60 days or risk dismissal of any unidentified defendant without prejudice. (Doc. 27 at 4, ¶ 9). Plaintiff failed to comply, and, therefore, Defendant Jane Doe #1 is dismissed without prejudice.

### Plaintiff's Motions for Status (Docs. 67, 68)

Plaintiff's Motions for Status (Doc. 67, 68) are granted. This Order resolves all pending motions.

**SUMMARY JUDGMENT STANDARD**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**FACTS**

Plaintiff was incarcerated at Western Illinois Correctional Center ("Western"). Defendants were employed at the facility in the following capacities: Defendant Shah was a physician; and, Defendant Miller was a nurse practitioner.[1]

Plaintiff injured his ankle walking down a flight of stairs on May 19, 2018. (Doc. 64-4 at 2). A nurse who examined Plaintiff the same day observed swelling in Plaintiff's ankle with limited range of motion, that Plaintiff's blood circulation was not disrupted, and that Plaintiff could move his toes. *Id.* The nurse prescribed ibuprofen, ordered a splint, ACE bandage, and

---

[1] The Court's Merit Review Order also permitted Plaintiff to proceed on an Eighth Amendment claim against Defendant Wexford Health Sources, Inc., the private company contracted to provide medical services in Illinois prisons, pursuant to *Monell v. Dep't of Social Srvcs. of City of New York*, 436 U.S. 658 (1978). (Doc. 15). The Court dismissed Defendant Wexford after finding that Plaintiff failed to exhaust his administrative remedies as to his *Monell* claim. (Doc. 43).

one-week low-bunk permit, issued crutches, scheduled a follow-up for May 19, 2018, with the nurse practitioner, and told Plaintiff to elevate the ankle. *Id.* at 2-3.

At the follow-up appointment three days later, Plaintiff reported reduced swelling and reduced pain with elevation of his ankle, an ACE bandage, crutches, and the prescribed ibuprofen. *Id.* at 1. The nurse practitioner noted redness in Plaintiff's ankle without bruising, that Plaintiff could wiggle his toes, and that he had a full range of motion. *Id.* X-rays taken May 24, 2018, disclosed no fracture or dislocation, only soft tissue swelling. *Id.* at 31. Plaintiff reported swelling and tenderness in his ankle during three examinations in the month that followed. *Id.* at 4-5. Medical staff authorized continued use of the crutches, ordered an ankle sleeve, adjusted his pain medications, and scheduled follow-up appointments. *Id.*

Defendant Shah examined Plaintiff on August 4, 2018. *Id.* at 6. He noted mild swelling, no tenderness, and normal movement in Plaintiff's ankle. *Id.* He diagnosed a soft tissue injury, prescribed prednisone (a steroid) for swelling, continued Plaintiff's use of crutches, and advised Plaintiff to keep his foot elevated. *Id.*

Defendant Miller discontinued the crutches on August 17, 2018, based on Plaintiff's ability to point his foot downward and move his ankle in circles without difficulty, his steady gait, and ability to bear weight on his injured ankle. *Id.* at 7. Defendant Miller opined that, despite Plaintiff's complaints of pain, continued use of the crutches would cause atrophy in his ankle muscles, resulting in additional pain and a longer recovery. (Doc. 64-3 at 4-5, ¶ 18). The range of motion Plaintiff had in his ankle suggested against a complete tear of the Achilles tendon. *Id.* at 4, ¶ 17.

Defendant Miller ordered a follow-up x-ray and ultrasound to check for conditions that may explain Plaintiff's continued soreness and swelling (bone spurs, hairline fractures), and to

rule out an Achilles tendon tear. (Doc. 64-4 at 7). She also ordered a low-bunk permit for six months, range of motion exercises to strengthen Plaintiff's ankle, advised Plaintiff to avoid running, sports, and jumping, and prescribed Meloxicam for pain. *Id.* at 7-8. X-rays conducted August 20, 2018, disclosed no fractures or dislocation and indicated that the soft tissue swelling seen in the previous x-ray had resolved. *Id.* at 32. An ultrasound conducted August 30, 2018, disclosed no evidence of an Achilles tendon tear. *Id.* at 44.

At an examination conducted September 29, 2018, Defendant Shah noted mild swelling in Plaintiff's ankle with normal range of motion and movement. *Id.* at 11. He reiterated his diagnosis of a soft tissue injury upon review of the ultrasound and advised Plaintiff to elevate his ankle and reduce the amount of walking or running. *Id.* He did not reissue crutches to Plaintiff because he believed doing so would hinder Plaintiff's recovery and ability to walk normally in the long-term. (Doc. 64-2 at 5, ¶ 17). Defendant Shah did not examine Plaintiff for his ankle injury after this examination.

Non-defendant medical staff diagnosed Plaintiff with a strained ligament in his ankle in October 2018. (Doc. 64-4 at 12). Plaintiff reported in November 2018 that his pain had "somewhat improved" with the over-the-counter pain medications that had been prescribed. *Id.* at 13. Medical staff provided Plaintiff with a home exercise plan per a physical therapist's recommendations, and Plaintiff completed approximately 39 physical therapy sessions in Western's healthcare unit from December 2018 through February 2019. *Id.* at 14-25. Aside from a January 2020 complaint for a left knee abrasion he suffered while playing basketball, Plaintiff made no medical complaints between the conclusion of his physical therapy sessions in February 2019 and the date he filed this lawsuit. *Id.* at 26-30.

## ANALYSIS

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. *Id.* at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). The parties do not dispute that Plaintiff suffered from an objectively serious medical need.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842. Courts defer to treatment decisions made by medical professionals unless the evidence shows that "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008).

A treatment decision permits an inference that the medical provider acted with deliberate indifference only when the decision constitutes "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Petties*, 836 F.3d at 729 (internal quotations omitted). Persisting in a course of treatment known to be ineffective, failing to follow

an existing protocol, delaying treatment without penological justification, and refusing to follow a specialist's recommendations may permit an inference that a medical professional failed to exercise the appropriate judgment. *Id.* at 729-30.

Plaintiff argues that Defendant Miller acted with deliberate indifference because she failed to diagnose the ligament issues, issue an order directing prison officials to move Plaintiff to a cellhouse that was located closer to the areas he frequented on a regular basis, restrict Plaintiff's access to the recreation yard and gym, and refer Plaintiff to the medical director. (Doc. 66 at 4-5). Plaintiff asserts that Defendant Shah acted with deliberate indifference for similar reasons, including failure to refer Plaintiff to an outside specialist. *Id.* at 5-7.

Medical staff provided continuous treatment to Plaintiff for his injured ankle that included medications to reduce the pain and swelling, medical devices and permits to provide support to the ankle and address Plaintiff's mobility issues, diagnostic imaging tests, and physical therapy while cautioning Plaintiff to avoid walking and running associated with sports activities. Medical staff routinely scheduled follow-up appointments to monitor Plaintiff's condition and adjusted treatment as necessary. Plaintiff's lack of medical complaints following the completion of physical therapy suggests that the treatment was effective.

Plaintiff has not presented any evidence showing that Defendants' diagnosis of his ankle injury substantially departed from acceptable medical judgment, and any alleged misdiagnosis, without more, does not amount to deliberate indifference. *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (collecting cases).

The decisions to forego recreation yard and gym restrictions, orders regarding housing, and referrals to specialists, like other medical decisions, require the exercise of professional judgment and violate the Constitution only if they are "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014). The record does not permit a reasonable inference that Defendants knew that the additional activity associated with access to the recreation yard or the location of Plaintiff's cell was likely to exacerbate his injury or cause unnecessary pain. Aside from Defendant Shah's first examination, both Defendants opined that Plaintiff's long-term recovery was best served through performance of low-impact, weight-bearing activities to strengthen muscles in his ankle and prevent further atrophy. The apparent success of Plaintiff's physical therapy program belies any argument that Plaintiff suffered further injury resulting from Defendants' decisions not to reissue crutches or employ restrictions designed to limit Plaintiff's movement. Nothing in the record suggests that Plaintiff required outside treatment from a professional other than the physical therapist to which medical staff referred him.

The record permits only the inference that Plaintiff received continued and responsive treatment for his ankle injury and that Defendants did not fail to exercise the requisite professional judgment. The Court finds that no reasonable juror could conclude that Defendants Shah and Miller violated Plaintiff's constitutional rights.

**IT IS THEREFORE ORDERED:**

1) **Defendant Jane Doe is dismissed for Plaintiff's failure to identify her within the applicable deadlines.**

2) **Plaintiff's Motions for Status [67][68] are GRANTED.**

3) **Defendants' Motion for Summary Judgment [64] is GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated, with the parties to bear their own costs. Plaintiff remains responsible for the $350.00 filing fee.**

4) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

Entered this 7th day of July, 2023.

*s/Joe Billy McDade*
JOE BILLY MCDADE
UNITED STATES DISTRICT JUDGE
